THE STATE EX REL. ST. LOUIS PUBLIC SERVICE COMPANY, Appellant, v. PUBLIC SERVICE COMMISSION OF STATE OF MISSOURI ET AL.

THE STATE EX REL. PEOPLES MOTORBUS COMPANY OF ST. LOUIS, Intervener, Appellant, v. PUBLIC SERVICE COMMISSION OF STATE OF MISSOURI ET AL.—34 S. W. (2d) 486.

Court en Banc, December 31, 1930.

1170

*T. E. Francis, O. P. Owens* and *J. R. Rose* for appellant St. Louis Public Service Company; *Carter, Jones & Turney* and *Robert Burkham* for appellant Peoples Motorbus Company of St. Louis.

*Julius T. Muench* and *Forrest G. Ferris, Jr.,* for intervener, City of St. Louis.

1172

*D. D. McDonald,* General Counsel, and *J. P. Painter,* Assistant Counsel, for Public Service Commission.

WHITE, J.—The appeal is from a judgment of the Circuit Court of Cole County affirming an order of the Public Service Commission whereby it refused to assume jurisdiction of a petition of the St. Louis Public Service Company praying for a certificate of convenience and necessity in extending its bus lines.

The question for determination is whether the Motorbus Act of 1927 (Laws 1927, p. 402), places under the supervision of the Public Service Commission busses operated over routes in a transportation system the major part of which is within the limits of a municipal corporation.

The St. Louis Public Service Company presented its application for such a certificate June 2, 1930, being a corporation operating motor busses with ninety-six miles of its system in the city of St. Louis, and nine miles in St. Louis County. It prayed for a cer-

tificate of convenience and necessity for an extension of 1.08 miles in St. Louis County. The city of St. Louis made application before the commission to intervene as a party in interest. Its application was sustained, and the city moved to dismiss the proceeding for want of jurisdiction in the Commission. The Peoples Motorbus Company operating motor busses over 25.57 miles in St. Louis and 20.26 miles in St. Louis County, presented an application to intervene as a party interested in the issuance of such a certificate. A hearing was had before the Commission, and the application denied for want of jurisdiction. In due course the St. Louis Motorbus Company and the Peoples Motorbus Company obtained a review on certiorari before the Circuit Court of Cole County with the result mentioned. From the judgment rendered in the circuit court each of the motorbus companies appealed.

The argument turns mainly upon the construction of Section 1 of the Motorbus Act of 1927. In the Session Acts of 1927 it is all in one paragraph, but for convenience we separate it into four paragraphs W, X, Y and Z, and underscore certain significant terms and phrases as follows:

Section 1 of the act is as follows:

"Section 1. DEFINITIONS. W. (a) *The term 'motor vehicle'* when used in this act means any automobile, automobile truck, motor bus, or any other self-propelled vehicle not operated or driven upon fixed rails or tracks. (b) The *term 'motor carrier'* when used in this act means any person, firm, corporation, lessee, trustee, or receiver operating *any motor vehicle* with or without trailer or trailers attached, upon any public highway for the transportation of persons for hire between fixed termini over a regular route, whether within one city or otherwise even though there may be periodical or irregular departures from said termini or route. (c) The term 'public highway' when used in this act means every public street, road or highway or thoroughfare of any kind in this State used by the public whether actually dedicated to the public and accepted by the proper authorities or otherwise. (d) For the purpose of this *act all motor carriers* as herein defined *are hereby declared to be common carriers provided that the term 'motor carrier'* as used in this act shall not include persons, firms, or corporations, or their legal representatives in so far as they own, control, operate or manage school busses.

X. "This act shall not be so construed as to apply to *motor vehicles* used in the transportation of passengers for hire, operating over and along regular routes within *any municipal corporation or a municipal corporation and the suburban territory* adjacent thereto, forming a part of a *transportation system* within such mu-

nicipal corporation or such municipal corporation and adjacent suburban territory, where the major part of such system is within the limits of such municipal corporation.

Y. "Any person, firm or corporation operating any *such transportation system* shall pay to the state, to be allocated as provided for in this act, for each bus regularly operated over any highway constructed or maintained by the state a sum equal to such proportion of the regular license fee provided for in section 6 of this act, as the bus mileage actually operated by *such person, firm or corporation* over highways constructed or maintained by the state bears to the total bus mileage actually operated by *such person, firm or corporation.*

Z. "Any person, firm or corporation operating *such motor vehicle* shall be deemed to be a *common carrier within the meaning of the public service commission law,* and, any of the provisions of said law to the contrary notwithstanding, before any such person, firm or corporation *shall hereafter begin the operation of* any route or shall hereafter extend any existing route, it shall first obtain from the public service commission a certificate that the present or future public convenience and necessity require or will require the establishment of such route or such extension. Before such certificate shall be issued, the applicant shall file in the office of the commission evidence in such form as the commission may require to show that the applicant has received the consent, or a franchise or permit of *such municipal corporation* for *such operation* as may be within the limits of *such corporation.*" [Laws of Missouri of 1927, page 402.]

It was determined by the Commission that the paragraph marked X, excluded from the operation of the Motorbus Act, and consequently from the jurisdiction of the Public Service Commission, the motor busses defined in that paragraph. The defendant designates them as "Urban Busses" as distinguished from interurban busses—which operate over the highways of the State from one city to another. Both of the motorbus companies concerned here come within the definition of that paragraph, the greater part of the transportation system of each being within the limits of the city of St. Louis.

I. The appellants assert that the effect of Section 1 of the act is to put two classes of motorbusses under the supervision of the Public Service Commission. They point to the significance of certain terms appearing in paragraphs marked Y and Z of Section 1. In paragraph Z appears the expression "such motor vehicle." It is pointed out that the term motor vehicle appears before only in paragraph X, and therefore

the provision definitely requires operators of urban busses to obtain the certificate applied for. It is further pointed out that the term "such transportation system" in paragraph Y occurs nowhere else in Section 1, except in paragraph X as noted above; therefore, "such motor vehicle" and "such transportation system" mentioned in paragraphs Y and Z must refer to those terms in paragraph X, relating to urban busses, and place the latter under the supervision of the Public Service Commission. The argument is based upon a rule of grammatical construction that a relative or qualifying term must refer to the last antecedent, that all the parts of Section 1 which we have set out above in paragraphs X, Y and Z are grouped together and refer to the same matters—the same motor vehicles and transportation system. The appellants concede that the provision excluding urban busses from the operation of the act must be given effect. The theory of the appellants is expressed in their brief as follows:

"It is our view of the matter—reinforced by an intimate knowledge of all of the legislative history of the Motorbus Act—that the Legislature took out from the Motorbus Act urban motorbusses (as defined in Section 1), and having done that affirmatively put them under another act, namely the already existing general Public Service Commission Law."

That construction would exclude urban busses from all of the act except Section 1, and Section 6, the latter referred to in Section 1.

Appellants call attention to the history of the act. As the Motorbus Bill was first introduced in the General Assembly Section 1 did not contain the matter set out above in paragraphs marked X, Y and Z. These provisions were added at different times as the bill was threshed around between the Senate and Senate Committee, the House and House Committee. Senator McCawley, who introduced the bill, was a witness before the Commission and explained the matter, as follows:

"When the Senate Bill No. 26 came up for engrossment there was rather a bitter fight, as the Commission will remember, so it was very much mutilated by the many amendments—many collateral things—we get into a bad temper and collateral things perhaps had their influence; at any rate, the bill was badly mutilated, and the House took the Senate Bill as we passed it and reconstructed it in form, substantially as the two houses had brought the bill out of the committees."

From the historical sketch presented by the appellants there were heated debates as to whether the act should be made to include urban busses such as the appellants operate. It is entirely possible that the members of the General Assembly who voted for the. bill did not all understand its provisions alike. That some parts of it

represented the views of some of the lawmakers and other parts met the demands of other members of the General Assembly. We are, therefore, obliged to interpret the law as it reads and reconcile its inharmonious provisions if possible. We may keep in mind the rule quoted from Cyc. by appellants to the effect that in interpreting relative or qualifying terms they must be construed as relating to the last antecedent instead of extending them to include others more remote *"unless such extension is clearly required by consideration of the entire act"* (36 Cyc. p. 1125).

It is further said, 36 Cyc. p. 1130,

"In the consideration of conflicting provisions in a statute the great object to be kept in view is to ascertain the legislative intent, and all particular rules for the construction of such provisions must be regarded as subservient to this end."

The exception in Section 1, X, is clear, definite and unequivocal:

"This act *shall not be so construed* as to apply to motor vehicles used in the transportation of passengers for hire."

It then defines urban motor vehicles as excluded from the operation of the act, not from some particular provisions of the act but from the entire act—Section 1 as well as other sections.

The appellants, while emphasizing the use of the word "such" as a relative, in paragraph Z, announce propositions of law such as "a rule of grammar is a rule of law," and a rule of grammar requires a relative to refer to the nearest antecedent that will make sense, but they lose sight of other contradictions which would ensue by adopting the construction contended for. They argue that unless the word "such" in "such motor vehicles," as used in paragraph Z of Section 1, quoted above, refers to the motor vehicles mentioned in paragraph X, it would lead to absurd results; that it could not refer to the motor vehicle defined in (a) in the first part of Section 1 because (a) furnishes a definition of "motor vehicles" which would make it apply to every person operating his own private automobile and such could not have been the intention. Thus they overlooked the arrangement in that first part of Section 1, marked W, which contains definitions of terms: (a) defines a "motor vehicle;" (b) defines a *motor carrier* as a "motor vehicle" used on the highways for the transportation of persons for hire; (c) defines "public highways," and (d) defines all motor carriers as herein defined as "common carriers."

"Such motor vehicles" in passage Z could very properly and accurately refer to the motor vehicles defined in (b) and (d). If these parts of Section 1 which we have designated as X and Y were omitted there would be no doubt that the use of "such motor vehicle" in Z would be an apt reference to those defined in Section 1, (a), (b), (d),

Likewise it may be said that "such transportation system" in the passage which we have marked Y would not necessarily refer to the same identical words, but to terms which are defined to mean the same thing. That is the "transportation system" described in the definition (b) which not only describes a motor carrier, but a transportation system of motor carriers. Also, if the paragraph which we have marked X were used at the end of the section instead of in the middle, and introduced by the word "provided," there could be no question that it excluded the motor vehicles mentioned in that passage from the operation of all of Section 1.

II. Appellants further claim that there must be two classes of motor busses provided for in Section 1 of the act, because in Section 1 there is no requirement of a certificate of convenience and necessity from *existing* carriers, while in Sections  4 and 11 of the act there is a requirement of such certificate for *any* motor carrier, including existing carriers, to operate or furnish service of the kind contemplated, interurban service.

The provision in Section 1 of the act, paragraph Z, is as follows:

"Before any such person, firm or corporation shall hereafter *begin* the operation of any route or shall hereafter *extend* any existing route, it shall first obtain from the public service commission a certificate," etc.

The first sentence of Section 4 of the Act is as follows:

"It is hereby declared unlawful for any motor carrier to operate or furnish service within this state without first having obtained from the commission a certificate that public convenience and necessity will be promoted by such operation."

It is a mere *inference* that the former relieves existing carriers of the necessity of obtaining a certificate. There is no direct language to that effect. The provision in Section 1 relates to the *beginning* of any *route* or extension of *an existing route*. It would apply to a carrier who already had a certificate as well as to a carrier seeking one for the first time. If any carrier after obtaining a certificate of necessity and convenience as required in Section 4, should desire to add a new route to its operation, or extend a route already in operation, it must first obtain a certificate. Appellants do not point to any provision from which an interurban bus operator would not have to do so. The provision quoted from Section 1 can apply and does apply to the carriers mentioned in sections 4 and 11. There is no reason for such a distinction if the act did provide for two classes. A statute should not be construed in a way to make it unreasonable when it can be given a reasonable construction.

It is contended further that the definition of "common carrier" in the paragraph which we have designated as Z, can apply only to urban busses because there are inconsistencies in the definition of common carrier. Under (d) in Section 1, it is argued, is a definition of common carrier which applies to interurban busses, the busses with which this act deals, while the reference to a common carrier in the paragraph Z, Section 1, defines "such motor vehicles" as common carriers, which must mean urban busses—those excluded from the general provisions of the act. Thus appellants assume that they have already proved the expression "such motor vehicles" must refer only to those mentioned in X, a position which we have shown to be untenable.

The existence of superfluous phrases or definitions in an act does not necessarily nullify the act or create duties and functions which are not in general contemplation by the act. Under (d) the definition of common carrier includes all motor carriers *"for the purpose of this act."* Then in passage Z they are mentioned as common carriers "within the meaning of the Public Service Commission law." In that connection is the necessity of obtaining a permit. There would be no inconsistency if those two separated sentences were put together and if they said "for the purposes of this act" all motor carriers were deemed common carriers "within the meaning of the Public Service Commission law." It is an awkward tautology, the result of the conglomerate assembling of the bill in the manner described by Senator McCawley.

But the principal reason why the passages marked Y and Z may not be applied to the proviso X is because the mere obtaining of a certificate of necessity and convenience for urban busses would be an unnecessary form. There is no provision in the act or in the Public Service Act by which the Public Service Commission could assume that definite, specific and complete regulation of the busses described which, to the legislative mind, appeared absolutely necessary in all other public service companies. No other interpretation harmonizes with the general purpose of the law, and any other interpretation would nullify the direct, positive and unequivocal command: "This Act shall not be so construed as to apply to motor vehicles used in the transportation of passengers for hire operating over and along the regular routes within any municipal corporation or a municipal corporation and the suburban territory adjacent thereto" etc.

The effect of the construction contended for by appellants is to erase that passage.

The theory of the appellants assumes two propositions: first, that the urban busses are excluded from the provisions of the Act of 1927, except the provisions of sections 1 and 6; second, that the Public Service Commission Act contains general regulatory measures

which would apply to urban busses as comprehensively and as definitely as necessary for their supervision. It becomes important, therefore, to consider the entire scope of the Public Service Commission jurisdiction and activities. The original Public Service Commission Act, enacted in 1913, appears with some amendments as Chapter 95 in Revised Statutes of 1919, and contains seven articles. Article I, contains general provisions governing the Public Service Commission; Articles II and III relate to common carriers —railroads and street railroads; Article IV relates to gas and electric and water companies; Article V relates to telegraph and telephone companies; Article VI, to procedure before commission and courts; Article VII, additional powers.

These several articles in Chapter 95 deal specifically and clearly in the case of each public service corporation with all details of its operation and general supervision, including the fixing of rates, the valuation of its properties; access to its records; the manner of making reports; the regulation of extensions; the transfer of franchises received and incurring of bonded indebtedness. In each of them, all such regulatory provisions are definite and complete, and apply specifically to the particular kind of public service corporation treated of in the article.

There is nothing in any of these regulatory measures which would apply to motor busses as common carriers. They had not come into general use so as to require regulation at the time the Public Service Commission was established. The lack of provisions in Chapter 95 which could be applied to motor busses, led to the enactment of the Motorbus Act of 1927, adding Article VIII to that chapter. As to motor busses which come within its terms it provides powers in the Commission to approve rates, fares, classifications, rules and regulations, hearing before granting a certificate of convenience and necessity, the discontinuance of service, annual license fees, allocation of fees, liability insurance, promulgation of safety rules and regulations and penalties for failure to comply with them, jurisdiction of courts which may entertain suits against motor carriers.

On the theory of the appellants those detailed regulations of interurban busses do not apply to urban busses; the latter are left, therefore, without any provision as to fixing rates, supervision of their rules, regulation as to their service, incurring indebtedness and other details which are deemed necessary for all other kinds of public service corporations under the supervision of the Public Service Commission. It would have been a peculiar attitude of the lawmakers, to leave the operators of a system of urban busses entirely without detailed regulation which is applied to all other public service corporations, including busses of another class but performing like service. This consideration lends force to the exact terms of

the exclusion proviso, "This act shall not be so construed as to apply to motor vehicles" (used as urban busses).

On the theory of the appellants the act does not apply to such urban busses except that they must obtain a certificate of convenience and necessity as provided in passage Z, and except as they must pay a license fee mentioned in passage Y, and Section 6 of the act. As appellants interpret it the act shall not apply to urban busses except as provided in the rest of the act. That is to say the act shall not apply to it except as it does apply to it.

The appellants assert that the urban busses are put under the already existing Public Service Commission law. Appellants fail to point out any provisions of the Public Commission law which could apply to them. That law does include common carriers. Urban busses are common carriers at common law, but the common carriers provided for in the Public Service Commission Act are defined by paragraph 9 of Section 10411, Chapter 95, as the term is "used in this chapter." It includes all railroad corporations, street railroad corporations, express companies, car companies, sleeping car companies, freight companies, freight line companies, steamboat, power boat, vessel boat, ferry companies and every corporation, lessees or receivers "owning, holding, operating, controlling or managing *such agencies* for public use." Not one of those terms would apply to motor busses which were practically unknown in 1913. Articles II and III provide specifically for the regulation of common carriers, railroads and street railroads and no other.

Section 10425, Revised Statutes 1919, relating to the jurisdiction of the Commission, mentions all common carriers operating or doing business within this State, but that can only mean common carriers within the definition of the term in Section 10411. Also paragraph 8 of Section 10425 gives the Public Service Commission jurisdiction of all persons, corporations or partnership engaged in the transportation of freight "as above defined." All this would limit it to the common carriers as the term is defined in the act. If appellant is correct we have two classes of motor busses under the supervision of the Public Service Commission, one of which is regulated in detail as other public service companies are, and the other is without any regulation whatsoever except as to license fees. It could not have been the purpose of the Legislature to make such a discrimination.

It is important to give some consideration to the title of the act. The title does not seem to contemplate urban busses. It says the act provides "for the supervision, regulation and conduct of transportation of persons for hire over the public highways of the State of Missouri by motor vehicles." Public highway is defined to mean every public street, road, highway or thoroughfare of any kind in this State used by the public, but of course interurban busses would

necessarily use streets as well as highways between cities and towns. In that connection it may be noted that Section 2 of the act after vesting in the Public Service Commission power to license, supervise, regulate, etc., motor carriers in this State, concludes:

"No provision of this act shall be so construed as to deprive any municipality within this state of its right to control the use of its streets or of the right to regulate all busses operating within its corporate limits."

If it had been the intention of the Legislature to place urban motor busses under supervision of the Public Service Commission it would have been easy to say so in so many words. In Section 2 the act provides for interurban busses in these words:

"The public service commission is hereby vested with power and authority, and it shall be its duty to license, supervise and regulate every motor carrier in this state to fix or approve the rates, fares, charges, classifications and rules and regulations pertaining thereto." [P. 404, Laws 1927.]

Then follow the other details as to the method of supervision and regulation, thus distinguishing them from urban busses. The construction contended for, we think, would do violence to the purpose of the act.

The judgment is affirmed. *Atwood, Gantt, Frank* and *Blair, JJ.,* concur; *Henwood, J.,* not sitting; *Ragland, C. J.,* absent.