STATE EX REL. FERGUSON-WELLSTON BUS COMPANY, Appellant, v. PUBLIC SERVICE COMMISSION.—58 S. W. (2d) 312.

Division Two, March 3, 1933.

*Glen Mohler* for relator.

*D. D. McDonald* and *G. C. Murrell* for respondent.

284

WESTHUES, C.—Respondent in this case adopted the statement of facts made by relator. It is short and to the point and we, therefore, adopt it as the statement of the case. It reads:

"This appeal is from the judgment of the Circuit Court affirming an order of the Public Service Commission, in which the majority of the Commissioners denied an application of appellant for a certificate of convenience and necessity to operate as a motor carrier of passengers between the municipalities of Ferguson and Florissant (St. Ferdinand), in St. Louis County, Missouri. Two of the Commissioners dissented from the order and filed a dissenting opinion.

"The opinion of the majority was based solely upon the view that the Commission is without jurisdiction to grant the certificate under the provisions of an act of the Legislature, approved May 5, 1931, and appearing in the Laws of 1931, at page 304, particularly subdivisions (b) and (e) of Section 5264 of that act.

"The evidence discloses that the municipalities of Ferguson and Florissant are respectively 5.5 and 8 miles from the corporate limits of the city of St. Louis and within the area defined as the 'suburban territory' of St. Louis by subsection (e). The evidence further shows that the proposed operation does not fall within the proviso of subsection (b), since appellant would not be operating within a municipality, nor would not operate thereunder a transportation system within a municipality, and that the major portion of such operation, i. e.. two and five-tenths (2.5) miles out of the entire proposed route of 3.8 miles would be outside the limits of any municipality.

"The majority opinion concedes these facts and the resulting conclusion that the jurisdiction of the Commission over the operation is not withdrawn or excepted by subsection (b) of Section 5264. It is said, however, to be denied by subsection (e).

"Appellant, for a number of years prior to the hearing, had been operating under a permit of the Commission and under its supervision from Wellston to Ferguson, and the purpose of the application was for an additional permit to extend its lines to Florissant."

Article 8 of Chapter 33, Revised Statutes of Missouri 1929, pertaining to the regulation of the transportation of passengers by motor vehicles for hire, was repealed by the Legislature of 1931 and a new article enacted in lieu thereof. The new article regulates the transportation of both property and persons by motor vehicles for hire. [See Laws 1931, pp. 304 to 316, inclusive.] As noted by the statement the controversy in this case arose over the meaning of subdivisions (b) and (e) of Section 5264, page 304, Laws 1931. The subdivisions read as follows:

"(b) The term 'motor carrier,' when used in this act, means any person, firm, partnership, association, joint-stock company, corporation, lessee, trustee, or receiver appointed by any court whatsoever, operating any motor vehicle with or without trailer or trailers attached, upon any public highway for the transportation of persons or property or both or of providing or furnishing such transportation service, for hire as a common carrier. *Provided, however,* this act shall not be so construed as to apply to motor vehicles used in the transportation of passengers or property for hire, operating over and along regular routes within any municipal corporation or a municipal corporation and the suburban territory adjacent thereto, forming a part of transportation system within such municipal corporation or such municipal corporation and adjacent suburban territory, where the major part of such system is within the limits of such municipal corporation."

"(e) The term 'suburban territory,' when used in this act, means that territory extending one mile beyond the corporate limits of any municipality in this State and one mile additional for each 50,000 population or portion thereof. Provided that when more than one municipality is contained within the limits of any such territory so described, motor carriers operating in and out of any such municipalities within said territory shall be permitted to operate anywhere within the limits of the larger territory so described."

In order to correctly interpret a statute it is most important to ascertain the purpose for which the law was enacted. [59 C. J. 958, sec. 570.] Referring to the title of Article 8, Laws 1931, page 304, and considering the provisions of the entire article we find that it was the intention of the Legislature to confer upon the Public Service Commission the jurisdiction and authority to license, regulate and supervise the transportation of persons and property over the public highways of this State by motor vehicles for hire.

Subdivision (c) of Section 5267, page 307, Laws 1931, reads as follows:

(c) All laws relating to the powers, duties, authority and jurisdiction of the public service commission over common carriers are hereby made applicable to all such motor carriers, except as herein otherwise specifically provided.''

There is no doubt that the Legislature intended that all motor carriers for hire of persons and property should be under the jurisdiction of the Public Service Commission unless expressly exempted therefrom in the act. It will be noted that in subdivision (b) of Section 5264, a transportation system operating within any city and suburban territory, where the major part of such system is within the limits of such city, is exempted from the provisions of the act. This proviso was made for the evident purpose of leaving to the municipalities the power to regulate the transportation systems serving the people of such cities and the surrounding territory. [State ex rel. v. Public Service Com., 326 Mo. 1169, 34 S. W. (2d) 486.] In subdivision (e) of Section 5264 suburban territory is defined. Taking that definition and applying it to the city of St. Louis the commission found that within the suburban territory of St. Louis are located the municipalities of Florissant and Ferguson, the points between which the applicant in this case desires a permit to operate busses for the transportation of passengers. It is common knowledge that a number of other municipalities, some of considerable size, are located within the suburban territory of the city of St. Louis as defined by the statute. Subdivision (e), after defining what is meant by suburban territory, contains a proviso. It is this proviso, as above set out, that is relied upon by the commission as depriving it of jurisdiction to grant the permit in this case.

If the proviso be given the construction placed thereon by the commission the transportation of passengers and property by motor vehicles for hire between the various municipalities located within the suburban territory of the city of St. Louis and other large cities would remain without any regulation whatever. That this was the intention of the Legislature is unthinkable. Such a construction would be inconsistent with the general scheme of the act. Nor do we think that the language used is subject to such a construction, when we take into consideration the purpose of the act and the existing conditions at the time the act was passed. The main purpose of the new act was to extend the jurisdiction of the Public Service Commission over motor carriers of property. What motor carriers did the Legislature then have in mind when it enacted the proviso and said: ''Motor carriers operating in and out of any such municipalities.'' It must be remembered that in subdivision (b) the transportation systems of the city of St. Louis are exempted from the act and permitted to operate in the suburban territory. This suburban territory, as defined in subdivision (e), includes the municipalities located within the area defined so that the transportation systems of the larger city are permitted to operate through and within the

municipalities lying in the suburban territory. The "suburban territory," as that term is defined in subdivision (e), of smaller municipalities of less than fifty thousand inhabitants is limited to one mile beyond the city limits. Therefore, the motor carriers operating within and out of such smaller municipalities would be prohibited from carrying passengers and property to points of more than one mile beyond the city limits of such municipalities unless the proviso in subdivision (e) grants them that right. This was the evident intent of the Legislature when it enacted the proviso. In other words, the proviso must be read in connection with subdivision (b) and the definition of "suburban territory" in subdivision (e). When we do this the intention is clear. The proviso grants to motor carriers, operating in and out of the smaller municipalities and coming under the regulation of such smaller cities, the right to carry passengers and property beyond the one mile limit and permits them to operate anywhere within the larger territory so described, in competition with the operators of the larger city. If it were not for the proviso the motor vehicle operators of the smaller cities would be placed at a disadvantage and the result would be an inconvenience to the general public. It is enforced reciprocity. It is not necessary to give the language employed in the proviso a strained or limited construction to reach this conclusion. What is a motor carrier operating in and out of a municipality? The description fits well any motor carrier who operates in any city and carries passengers and property from one point to another within the city or beyond the city limits within a suburban territory. The description does not fit the applicant for a permit in this case. The applicant does not seek to carry passengers from one point to another within any city, nor is the major portion of the transportation system of the applicant located within any one city so as to come under the proviso in subdivision (b) The applicant's purpose is to transport passengers from one municipality to another municipality.

We, therefore, hold that in the proviso in subdivision (e) the Legislature did not exempt any motor carrier from the operation of the act. The only effect of the proviso is to grant the motor carriers, exempted from the act by the proviso in subdivision (b) operating in municipalities located within the suburban territory of a larger city, the right to carry passengers or property anywhere within the limits of the larger territory.

The applicant in this case must, in order to legally transport passengers by motor vehicle for hire between the municipalities of Ferguson and Florissant (St. Ferdinand), obtain a certificate of convenience and necessity from the Public Service Commission. This construction is in harmony with the plain intent of the Legislature and with statutory construction. [59 C. J. 948, sec. 568; Koppel v. Rowland, 319 Mo. 602, 4 S. W. (2d) l. c. 817 (2).]

288

It follows that the judgment of the Circuit Court of Cole County, affirming the order of the commission denying jurisdiction of the case, must be reversed with instructions to the circuit court to set aside the order of the commission and to remand the cause to the commission with instructions to proceed to hear and determine the case in a manner not inconsistent with this opinion. It is so ordered. *Cooley* and *Fitzsimmons, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. *Ellison, P. J.,* and *Tipton, J.,* concur; *Leedy, J.,* not sitting.