**DELTA AIR LINES, INC., a corporation, Respondent,**

v.

**MISSOURI STATE TAX COMMISSION, John A. Williams, J. Ralph Hutchison, and Howard L. Love, Members of the Missouri State Tax Commission, and J. R. Towson, Secretary of the Missouri State Tax Commission, Appellants.**

No. 49731.

Supreme Court of Missouri,

In Banc.

May 11, 1964.

Thomas F. Eagleton, Atty. Gen., Joseph Nessenfeld, Asst. Atty. Gen., Jefferson City, for appellants.

Kerth, Thies & Schreiber, Alfred H. Kerth, Clayton, Thompson, Mitchell, Douglas & Neill, James M. Douglas, Richard P. Conerly, W. Stanley Walch, St. Louis, for respondent, Delta Air Lines, Inc.

John R. Moberly, Douglas Stripp, George T. Morton, Jr., Kansas City (Watson, Ess, Marshall & Enggas, Kansas City, of counsel), for United Air Lines, Inc., amicus curiae.

EAGER, Chief Justice.

Respondent, Delta Air Lines, Inc., filed its petition under § 536.100 [1] for the review of a final order of the State Tax Commission fixing an ad valorem assessment upon its aircraft in the sum of $751,592. On review, the order was reversed and the cause remanded with directions to fix the assessment at $285,609. The assessment, made in 1960, was for the year 1959. The Commission, its members, and its Secretary appealed. We have jurisdiction because the appeal involves the construction of our revenue laws, specifically Chap. 155, being S.B. 179 of the Laws of 1959. The facts were stipulated for the purposes of the review.

Delta Air Lines, Inc. (which we shall refer to as Delta) is an air carrier of both passengers and property operating interstate under appropriate federal authority; it also operates into certain foreign countries. It is a Louisiana corporation, duly registered in Missouri, with its principal place of business in Georgia. It operates over certificated routes in twenty states, including Missouri. During 1959, its aircraft made 12,160 arrivals and departures at the St. Louis airport (St. Louis County), 1,458 at the Kansas City airport, and 2,904 at the Springfield airport. As of January 1, 1960, it had 17 daily flights scheduled to or from St. Louis, 4 daily flights to or from Kansas City, and 4 to or from Springfield; its certificated route miles in Missouri were 385, as compared with 12,555 system-wide, the ratio being 3.0665%. During 1959, only 3 types of Delta's planes were flown in Missouri on its scheduled flights, namely, Convair 340/440's, Douglas DC-6's, and Douglas DC-7's. No craft of its other types entered Missouri. Of the three types flown in Missouri Delta owned and used 28 Convair 340/440's, 7 Douglas DC-6's, and 16 Douglas DC-7's. The net depreciated cost of all planes of each of these 3 types as of January 1, 1960, and as determined by

the Commission was, respectively, $7,478,-458, $1,494,957, and $15,539,144, aggregating $24,512,559. The 5 types not flown in Missouri during 1959 consisted of the following (the figures in parentheses show the Commission's respective depreciated valuations): 10 Douglas DC-3's ($241,501); 4 Douglas DC-7 85-passenger coaches ($5,800,147); 6 Douglas DC-8's ($25,489,489); 5 Curtiss-Wright C-46's ($339,709); and 4 Lockheed L-049's held in storage for sale ($1,049,502). The aggregate depreciated valuation fixed by the Commission on all of Delta's aircraft was thus $57,432,907. The cost and depreciated values of the various individual planes varied widely because of differences in types and dates of purchase. The aggregate depreciated value of the 5 types of planes not flown in Missouri constituted slightly more than 57% of the valuation of all of Delta's planes.

Of the 3 types flown in Missouri during 1959, the Convair 340/440's flew 1,042,-006 miles in Missouri as compared to 15,800,275 everywhere; the Douglas DC-6's, 163,968 as compared to 11,015,087; the Douglas DC-7's, 75,688, as compared to 17,443,958. These figures aggregated are: 1,281,662 miles in Missouri and 44,259,320 miles everywhere. The other 4 types which were flown exclusively outside Missouri (omitting the Lockheeds) flew a total of 12,081,957 miles. Thus, the ratio of miles flown in Missouri to total miles flown was 2.2748%. The ratio of miles flown in Missouri to miles flown everywhere by the types operated in Missouri was 2.8958%. No figures were submitted as to the miles flown by individual planes,—hence there is and can be no objection to considering the miles flown by types. It has been agreed that the aircraft of any certain type were used interchangeably in performing a particular service. The approximate percentages of *time* spent in Missouri by the 3 types of planes flown there were as follows: Convair 340/440's—6.5949%; Douglas DC-6's—1.4886%; Douglas DC-7's—0.4339%.

1. All statutory citations refer to RSMo 1959 and V.A.M.S., although the petition for review was actually filed pursuant to the 1949 statutes.

Delta filed with the Commission its report giving all required information for the year 1959, including all of the foregoing and considerably more. Delta owned a total of 80 planes in 1959; 51 of these had flown in air commerce in Missouri; 4 had not flown anywhere; 25 had flown in air commerce exclusively outside of Missouri.

Section 155.040, which provides for the assessment of aircraft, is as follows: "1. The state tax commission shall assess, adjust and equalize the valuation of all aircraft operated in this state in air commerce by every airline company. The valuation apportioned to this state shall be the portion of the total valuation of the aircraft as determined by the state tax commission on the basis of the arithmetical average of the following two ratios:

"(1) The ratio which the certificated route miles of the airline company within the state bears to the total certificated route miles of the airline company;

"(2) The ratio which the miles flown by aircraft of the airline company within this state bears to the total miles flown by the aircraft of the airline company during the immediately preceding calendar year.

"2. In the event one ratio is inapplicable, then the apportionment shall be made on the basis of the remaining ratio alone." Section 155.050 provides that the Commission shall apportion the valuation, as determined under § 155.040 to the various governmental subdivisions "in which the airline company has arrivals and departures." Section 155.060, relied on in part by appellants, is (in so far as material here) as follows: "Taxes levied on all aircraft under this chapter shall be levied and collected in the manner provided for the taxation of railroad property, and the county courts and other officials shall perform the same duties and may exercise the same powers in levying and collecting the taxes on aircraft as such officials are required to perform in the levy and collection of taxes on railroad property. * * *"

Section 155.020 (the "reporting" section) requires that each airline company shall, on or before May 1st in each year, furnish to the Commission a sworn statement showing: "(1) The total length in this state of its certificated routes; (2) The total length of its certificated routes; (3) The total miles flown in this state by its aircraft during the next preceding calendar year; (4) The total miles flown by such aircraft during the next preceding calendar year; (5) The total number of all aircraft owned, used or leased by such airline company on the first day of January in each year, and the actual cash value thereof; (6) The other information the state tax commission requires to enable it to carry out the provisions of this chapter."

The Commission fixed the amount of its assessment ($751,592) by first taking the total value (depreciated cost) of *all* of Delta's aircraft, including those not operated in Missouri in 1959 and also including the 4 Lockheeds which had not been operated at all, a figure of $57,432,907; it then applied to that figure the average of the two ratios provided in § 155.040, the first ratio being 2.2748%, the second 3.0665%, and the average 2.6707%. The resulting figure was $1,533,860; it then deducted an equalizing factor of 49%, thus arriving at its final assessment figure of $751,592 as that part of the total valuation apportioned to Missouri.

The Circuit Court reversed the order of the Commission, with the direction that the assessment should be $285,609. Apparently this figure was arrived at through findings that only the value of those planes which were flown in Missouri should be considered, that a formula should be applied separately to each *type* of plane and the results added, and that in lieu of the averaged statutory formula of route miles and miles flown, the amount of the assessment should be computed by applying respective percentages based upon a ratio of the maximum *time spent* in Missouri by each type of plane to its total time spent elsewhere. The Court further found that the decision of the Commission was in excess of its statu-

tory authority, was not supported by substantial and competent evidence, was not authorized by law, was arbitrary and capricious, and was "in violation of provisions of the state and federal constitutions." On appeal the case was heard here in Division One where the judgment was reversed and the decision and action of the Commission was in all things approved except that the Court eliminated from the Commission's aggregate valuation the depreciated cost of the 4 Lockheed planes held in storage during 1959, a matter of $1,049,502; this would make a rather minor reduction in the total assessment. Upon a dissent, the cause was transferred to the Court in Banc and there reargued.

We state the basic contentions of the parties here without specific reference to the points of their briefs. Appellants insist: that the Commission correctly considered and included the valuation of all Delta's aircraft and correctly applied the statutory formula to such value, since this computation constituted only a fair apportionment to Missouri of its share of the unitary or integrated value of its aircraft operated in Missouri; that a correct interpretation of Chap. 155 of the statutes permits this; that nothing in the statutes requires an assessment of each type of aircraft separately, or "by-type," nor an assessment by a formula based solely upon "time spent" in Missouri as compared with time spent elsewhere; and that Delta had failed to show that the assessment as made was so grossly excessive, unfair and unreasonable as to be invalid, constitutionally or otherwise. Delta contends that the statutes contemplate the apportionment to Missouri of a part of the total valuation of the *aircraft operated in Missouri;* that the assessment as made by the Commission constituted such an arbitrary, grossly excessive and unreasonable apportionment of value to Missouri as to violate constitutional provisions for due process and the commerce clause of the federal constitution. As more or less subsidiary points, Delta also insists: that the only permissible mode of assessment under the statutes consists of the application of the proper formula separately to each type of aircraft, and that the only proper and lawful standard of reasonableness is one based on the ratio of time spent in Missouri to the total time spent elsewhere, by those planes which actually operated in Missouri.

■■■ The initial and basic issue here is whether the Commission was authorized by Chap. 155 to apply the apportionment formula to the aggregate value of *all* aircraft of Delta (as it did) or whether it should have been applied only to the value of those "aircraft operated in this state in air commerce," or, in other words, only to the aggregate value of those planes which were flown in Missouri during 1959. We have answered that question in considerable detail in an opinion recently adopted in Banc in the case of United Air Lines, Inc. v. State Tax Commission et al., Mo., 377 S.W.2d 444, and in a Per Curiam opinion modifying the original opinion in certain respects. We also discussed there in considerable detail the cited authorities, which accounts for the absence of such a discussion here. It was there determined, after a consideration of all the arguments now made pro and con, that Chap. 155 contemplates that the apportionment formula should be applied only to the valuation of the aircraft which were operated in Missouri in air commerce during 1959; was also held, and now adhere to both rulings, that there is no requirement in the statutes that the assessment be made separately *"by-type,"* nor is there any requirement that it be made in the aggregate. We repeat here, however, that it would not seem appropriate for the Commission to shift back and forth from one method to the other under differing circumstances, although we do not intimate that it has done or might do so.

■■■ The parties here agree that if the method of assessment approved in the United case is applied here the assessment would be $358,089. This, technically speaking, still leaves the contention of Delta that

the only fair test of the reasonableness of an assessment is the ratio of time spent in Missouri to time spent elsewhere by the Missouri planes. These percentages, by types of planes, are stated above. We hardly deem it necessary to discuss here the factual and legal arguments made in support of that theory, for the reasons to be stated. The result of an assessment on that basis is said to approximate an assessment made solely on the second statutory ratio of miles flown within Missouri to the total miles flown everywhere. It is immediately noted that such a standard simply ignores the first statutory requirement, namely, the ratio which the certificated route miles in Missouri bears to the total certificated route miles everywhere, with which the "miles flown" ratio is to be averaged. We may not arbitrarily disregard one of the specified statutory ratios. Delta apparently urges this view, either on the theory (a), that the first ratio is "inapplicable," § 155.040(2), or (b), because any other method results in an unreasonable and arbitrary assessment. There is no apparent reason why the first ratio would be inapplicable and we cannot ignore an integral part of the statutory provisions unless we declare them invalid as unconstitutional. The statutory ratio is certainly not "inapplicable" merely because it would increase the assessment somewhat. An example of "inapplicability" would lie in the taxation of noncertificated air-carriers. Delta has recognized in its brief that where assessments on a comparative mileage basis have been condemned, this has only been because of the excessive and unrealistic amounts assessed, citing, 57 Harvard Law Review, 1109, note. On the test of constitutionality we also note here, as we did in our Per Curiam in United, that such objections are only applicable where the method adopted and its result are "arbitrary, unfair, unreasonable, or confiscatory, as applied to the particular facts of the case," citing Hans Rees' Sons, Inc. v. North Carolina ex rel. Maxwell, 283 U.S. 123, 51 S.Ct. 385, 75 L.Ed. 879, and Norfolk & Western Ry. Co. v. North Carolina ex rel. Maxwell, 297 U.S. 682,

56 S.Ct. 625, 80 L.Ed. 977. Recognizing this, Delta says: "In taxing moveables used in interstate commerce such as railroad rolling stock and aircraft the various states may, in the absence of special circumstances, apportion part of the value of the entire fleet by using an apportionment formula based in whole or in part on system or route miles. When such an apportionment formula is utilized, however, the taxpayer has the right to prove the actual facts concerning the value of its property present and employed in the taxing state in order to demonstrate that the formula as applied to said taxpayer is unconstitutional."

It is true that our conclusions here result in an increase of $72,480 over the assessment directed by the trial court ($285,609). That assessment figure was, in our view, arrived at under misconceptions as to the necessity of the by-type approach, the elimination of the route miles ratio and the finding that the maximum assessment legally permissible was $285,609. When we consider that the Commission was necessarily apportioning to the State of Missouri its fair share of taxation on aircraft concededly valued at $24,512,559 (Missouri planes only), we readily see that the difference is not such as to make the assessment arbitrary or unfair or one which, per se, attributes to Missouri values which exceed "the value of its aircraft * * * actually present in Missouri * * *." (Quoted from Delta's brief in Banc.) Indeed, Delta substantially concedes this, as indicated by the further quotation from its brief in Banc, as follows: "On the other hand, if the statute is construed as Delta contends so that an ultimate assessment of either $326,965 (on a 'by-type' basis) or $358,089 (on a 'lump sum' basis) is sustained, then there is relatively little difference between the assessments based on the statutory formula and an assessment based on the value of Delta's aircraft that were actually present in Missouri, and the Court may be able to conclude that the statutory formula as construed by Delta and the Dissenting Opinion can constitutionally be applied to Delta in this particular in-

stance." We are impelled to say that Delta's situation here is somewhat analogous to that of the farmer who, after selling his hogs, said that he did not get as much for them as he expected, but that he didn't really think he would. We find no constitutional restrictions upon an assessment of $358,089 and, in our view, that should be the amount. As in United, we do not reach any question of constitutional objections to the method used by the Commission in starting with a valuation of all of Delta's aircraft, for we have construed the *statute* as providing that it may not do so. Constitutional questions are generally not decided where such a determination is unnecessary. State ex rel. State Board of Mediation v. Pigg, 362 Mo. 798, 244 S.W.2d 75; City of St. Joseph v. Roller, Mo., 363 S.W.2d 609; Rider v. Julian, 365 Mo. 313, 282 S.W.2d 484.

While we agree, generally, with paragraph 1 and in part with paragraph 5 of the Court's findings, we do not concur in paragraphs 2, 3, or 4, nor in the amount fixed in the order and judgment. Under these circumstances, we reverse the judgment and remand the cause with directions to enter a new judgment in accordance with the views expressed in this opinion.

STORCKMAN, LEEDY, and DALTON, JJ., concur.

HYDE, J., dissents in separate opinion filed.

HOLMAN, J., dissents and concurs in dissenting opinion of HYDE, J.

HYDE, Judge (dissenting).

I dissent in this case, and dissented in United Air Lines, Inc. v. State Tax Com-

mission of Missouri, Banc, Mo., 377 S.W. 2d 444, for the following reasons stated in the opinion of Houser, C., adopted in Division No. 1, before transfer to the Court en Banc, hereinafter set out without quotation marks. If the next session of the General Assembly desires to clarify the statutes involved, it may be helpful for it to have these views as well as those stated in the principal opinion.

The basis of the decision of the Tax Commission is that in enacting new Chapter 155 the General Assembly has extended to commercial airline companies the unit method of assessment heretofore applied to the rolling stock of railroads. In the case of a railroad system operating in several states it has long been considered that the only practical method of assessing and collecting taxes upon that portion of the system lying within the taxing state is to make an assessment and valuation of the entire system, "as a homogeneous unit representing a single profit-earning business," 51 Am.Jur. Taxation § 877, and then to assign a percentage of that total valuation to the taxing state, according to some fair and reasonable method of apportionment. 84 C.J.S. Taxation § 426 c. The courts have considered that the valuation of the rolling stock of railroads as a whole under the unit method of assessment and the apportionment of such value to the taxing state in the proportion the number of miles of railroad operated in the taxing state bears to the total mileage of lines in the entire system, is a proper and permissible method of arriving at an assessment of rolling stock, Pullman's Palace Car Co. v. Pennsylvania, 141 U.S. 18, 11 S.Ct. 876, 35 L.Ed. 613; St. Louis Southwestern Ry. Co. v. State Tax Commission, Mo.Sup., 319 S.W.2d 559.[1] Another approved apportionment basis is that of the average number of cars habitually employed within

---

[1]. The Missouri statute directs the State Tax Commission to "assess, equalize and adjust only such proportion of the total value of all the rolling stock of such railroad company as the number of miles of such road in this state bears to the total length of the road as owned or controlled by such company." § 151.060, (3).

the state during the tax year. American Refrigerator Transit Co. v. Hall, 174 U.S. 70, 19 S.Ct. 599, 43 L.Ed. 899; Johnson Oil Refining Co. v. Oklahoma, 290 U.S. 158, 54 S.Ct. 152, 78 L.Ed. 238. The unit method of assessment was approved as to inland water carriers in Ott v. Mississippi Valley Barge Line, 336 U.S. 169, 69 S.Ct. 432, 93 L.Ed. 585, and in 1954 this method was upheld in the nondomiciliary assessment of airplanes operating in interstate commerce. Braniff Airways v. Nebraska, 347 U.S. 590, 74 S.Ct. 757, 98 L.Ed. 967. The theory of the unit method of assessment is that moving equipment has an augmented or enhanced value because of its connection with an integrated, operational whole and therefore may be taxed according to its value "as part of the system, although the other parts be outside the state; in other words, the tax may be made to cover the enhanced value which comes to the property in the state through its organic relation to the system." Pullman Co. v. Richardson, 261 U.S. 330, 43 S.Ct. 366, 368, 67 L.Ed. 682.

Under the unit method of evaluating that portion of the property of an interstate carrier having a tax situs in a nondomiciliary state the taxing authority first determines *the value of the entire system as a whole,* and then determines what percentage of that value is allocable to the taxing state. 51 Am.Jur. Taxation § 877; 84 C.J.S. Taxation § 426 c, p. 839. The valuation of the property of an interstate carrier *in its entirety,* as the basis for apportionment, has always been at the foundation of the unit method, or "rule of entirety" as it was originally denominated. Judson on Taxation, 2nd Ed., § 259. That this is what the General Assembly had in mind in enacting Chapter 155 is apparent from a consideration of its various provisions. In order for the State Tax Commission to determine the value of the entire system of an airline company the latter is required to report the "actual cash value" of "all aircraft owned, used or leased by such airline company on the first day of

January in each year." § 155.020(5). Section 155.040 provides the method by which this state's share of that total valuation shall be apportioned. The prescribed formula incorporates the arithmetical average of two ratios. The first ratio relates to certificated route miles, and is ascertained by dividing the *total certificated route miles everywhere in the entire Delta system* by the certificated route miles of Delta within Missouri. The information as to total length of certificated routes *everywhere* and total length of certificated routes in this state is required to be furnished by the airlines. § 155.020(1) and (2). The second ratio relates to miles flown, and is ascertained by dividing the *total miles flown by the aircraft of Delta everywhere in its entire system* during the preceding year by the miles flown by Delta aircraft within this state during that period. The information as to total miles flown *everywhere* in the entire system and total miles flown in this state is required to be furnished by the airline companies. § 155.020(3) and (4).

There is nothing in § 155.040 to support the view that the words "the aircraft" occurring in the second sentence are limited to aircraft operated in this state, as contended by Delta. The second sentence does not undertake to apportion to this state a portion of the valuation of the aircraft "operated in this state." It apportions to Missouri a portion of "the total valuation of the aircraft." What total valuation of what aircraft? Obviously, the total "actual cash value" of "all aircraft owned, used or leased by such airline company on the first day of January in each year," information required to be furnished by § 155.020; information required to be in the files of the State Tax Commission at the time of the assessment. Significantly, the airline company is *not* required to give the Commission information as to the total valuation of all aircraft operated in this state; is not required to provide the basis for the calculation Delta would have the Commission make. It is reasonable to assume that if the General Assembly had intended that

the calculation be based upon the valuation only of aircraft operated in this state the words "the aircraft" occurring in the second sentence of § 155.040 would have been so modified. If that had been intended, the total certificated route miles *everywhere* and total miles flown *everywhere,* as prescribed by the act passed, would not have been appropriate factors to take into consideration in determining the ratios; it would have been more appropriate for the ratios to have related total certificated routes in Missouri to total length of certificated routes here and elsewhere of airplanes entering and leaving Missouri, and total miles flown in this state to total miles flown here and elsewhere by airplanes entering and leaving Missouri. In other words, the fact that system-wide factors were incorporated in the formula supports the conclusion that a system-wide assessment was contemplated as the basis for the apportionment.

The first sentence of § 155.040, which defines and limits the subject of taxation to aircraft having a taxable situs in Missouri, is not inconsistent with this construction. Its language "all aircraft operated in this state" has no reference to the apportionment provisions of the second sentence. The first sentence serves merely to identify aircraft operated in this state as the subject of taxation, as distinguished from aircraft not operated in this state. It constitutes a legislative recognition of the rule that aircraft not operated in this state cannot constitutionally be subjected as such to direct ad valorem taxation. The words "the aircraft" in the second sentence do not refer to the words "all aircraft operated in this state" in the first sentence, under the doctrine of last antecedent. This rule is merely an aid to construction, and is not to be applied where a consideration of the entire act clearly requires the application to words more remote. State ex rel. St. Louis Public Service Co. v. Public Service Commission, 326 Mo. 1169, 34 S.W.2d 486; 82 C.J.S. Statutes § 334.

That the General Assembly had the railroad statute in mind in enacting Chapter 155 is evident by the provision of § 155.060 that taxes levied on aircraft under this chapter shall be levied and collected in the manner provided for the taxation of railroad property.

Considering the over-all objectives and purposes of Chapter 155 it seems clear that "the aircraft" occurring in the second sentence of § 155.040 relate and apply to the words "all aircraft owned, used or leased by such airline company" occurring in § 155.020(5). We conclude that Chapter 155, considered as a whole as well as section by section, reveals a clear intention that in assessing aircraft of interstate airline companies for ad valorem taxation the State Tax Commission shall make a total valuation of all of the aircraft of the company, wherever operated, as the basis for the allocation, under the unit method of assessment.