264 F.Supp. 193 (1967)
In the Matter of MIDAS COIN COMPANY, Inc., Bankrupt.
No. 66 B 283(3).
United States District Court E. D. Missouri, E. D.
February 7, 1967.
*194 George J. Bude, Clayton, Mo., for Community Bank.
Ben Zuke, St. Louis, Mo., Curtis L. Mann, Clayton, Mo., for trustee.

MEMORANDUM OPINION AND ORDER
REGAN, District Judge.
This petition for review of the order of Referee in Bankruptcy Brauer, denying the petition of St. John's Community Bank to foreclose a collateral note and granting the petition of the trustee in bankruptcy for a turnover order, requires the construction of the Uniform Commercial Code as adopted by Missouri and its application to a security agreement involving a pledge of United States coins having an appreciated numismatic value. The facts are not in dispute. The sole issue is whether under such facts the filing of a financing statement was essential to perfect the Bank's right as against the trustee.
The business of bankrupt was buying and selling coins and stamps for profit. On or about January 14, 1966 the bankrupt executed a promissory note payable to the Bank in the principal amount of $9,637.58 and pledged as collateral security therefor coins constituting part of its inventory and having a face value of $9,750.50. The pledge or security agreement provides that the collateral shall secure the payment of all other liabilities owing by bankrupt to the Bank, as well as the note itself. At the date of bankruptcy, February 7, 1966, a balance of $6,314.58 was due on the note. In addition, by reason of an overdraft in bankrupt's checking account, another $3,411.40 was also owing to the bank. Under the terms of the security agreement this additional indebtedness is also secured by the pledged coins. Such an agreement is valid. Russell v. Empire Storage & Ice Co., 332 Mo. 707, 59 S.W. 2d 1061, 1070; Section 400.9-201 V.A. M.S.
Coins of the face value of $6,432.50 are presently being held pursuant to the pledge agreement. The Bank seeks to have its claim of $9,725.98 allowed as a secured claim, and for authority to foreclose the collateral note by public sale of the pledged coins and apply the proceeds of the sale to the balance of its claim. On the other hand, the trustee prays for an order requiring the Bank to turn over to him all of the coins as assets of the bankruptcy estate on the ground it failed to perfect its lien as required by the Uniform Commercial Code. Admittedly, no financing statement was filed.
The coins in question and others had been purchased by bankrupt either from other coin dealers or from collectors because of their numismatic value, and such coins are considered part of the bankrupt's inventory and stock in trade which it owned and intended to sell in its regular course of business. Whenever any coins were sold by bankrupt (except to dealers) the Missouri sales tax was paid on the transaction in compliance with Section 144.120 V.A.M.S., imposing a tax upon every retail sale of tangible personal property.
The Uniform Commercial Code applies to transactions entered into and events occurring after July 1, 1965. Laws Mo. 1963, page 637. The Referee held that the instant transaction was governed by Article 9 of the Code which pertains to secured transactions. Section 400.9-102 V.A.M.S. provides that except as otherwise provided in two designated sections not here involved, Article 9 applies to any *195 transaction which is intended to create a security interest in personal property, "including goods, documents, instruments, general intangibles, chattel paper, accounts or contract rights."
Section 400.9-302(1) (a) of Article 9 provides that a financing statement must be filed to perfect all security interests, except a security interest in collateral in possession of the secured party under Section 400.9-305. The latter section authorizes the secured party to perfect a security interest in goods, instruments, negotiable documents or chattel paper (as well as letters of credit and advices of credit) by taking possession of the collateral. It is the Bank's position that having taken possession of the collateral, its security interest has thereby been perfected, so that no financing statement was required to be filed.
The trustee contends, and the Referee held, that Section 400.9-305 V.A.M.S. is not here applicable, upon the theory that coins are money, and that since money is not one of the kinds of property enumerated in that section, the only method of perfecting a security interest therein is by filing a financing statement. Concededly, the pledged coins are not instruments, negotiable documents or chattel paper as these terms are defined by the Uniform Commercial Code or otherwise. Nor are they letters or credit or advices of credit. The only other class of property specifically referred to in Section 400.9-305 is "goods."
The issue here argued by the parties is whether the pledged coins are "goods" as that term is used in Section 400.9-305. Although not here directly pertinent, we note that goods are further classified by the Code into four classes; Consumer Goods, Equipment, Farm Products and Inventory, the definition of each such class relating to the use made of the goods rather than the nature of the goods itself. Section 400.9-109 V.A.M.S. Unquestionably, if the coins here involved are "goods", they would be inventory within the meaning of the Code, as they are in fact.
"Goods" are defined in Section 400.9-105(1) (f), V.A.M.S. as follows:
"`Goods' includes all things which are movable at the time the security interest attaches or which are fixtures (section 400.9-313), but does not include money, documents, instruments, accounts, chattel paper, general intangibles, contract rights and other things in action. `Goods' also includes the unborn young of animals and growing crops;".
The present controversy results from the express exclusion of "money" from the definition of "goods." The only definition of the word "money" as used in the Code is that contained in Section 400.1-201(24) of Article 1 of the Code:
"`Money' means a medium of exchange authorized or adopted by a domestic or foreign government as a part of its currency."
The Referee, in sustaining the position of the trustee, held that since the coins here involved are United States Government coins like other such coins which circulate freely as a medium of exchange and could have been used as money, they are necessarily and for all purposes "money" as defined by the Code. And since "money" is excluded from the Article 9 definition of "goods," the Referee concluded that even though the pledged coins were treated as a commodity and not as a medium of exchange, the Bank could not perfect its security interest therein simply by taking possession, but was required to file a financing statement. In our judgment, this interpretation of the Code, as applied to the circumstances of this case, is unreasonable and unrealistic and not in accord with the legislative intention.
The law favors a construction which harmonizes with reason and which tends to avoid absurd or unreasonable results. Wellston Fire Protection District, etc. v. State Bank & Trust Co., Mo.App., 282 S.W.2d 171, 174; Garrard v. State Dept. of Public Health & Welfare, Mo. App., 375 S.W.2d 582, 590; Laclede Gas Co. v. City of St. Louis, 363 Mo. 842, *196 253 S.W.2d 832, 835. "A statute should not be construed in a way to make it unreasonable, when it can be given a reasonable construction." State ex rel. St. Louis Public Service Co. v. Public Service Commission, 326 Mo. 1169, 34 S.W.2d 486, 489. Cf. City of Joplin v. Joplin Water Works Co., Mo., 386 S.W.2d 369, 373-374.
That the coins were delivered to and are in the physical possession of the Bank is not in dispute. The case here presented is the classic one of a common law pledge of tangible personal property, and but for the fact that Section 400.9-305 is not aptly worded to expressly cover the unusual situation here presented, there would be no question but that the Bank would not be required to file a financing statement.
Of significance is the official comment to Section 400.9-305 by the American Law Institute and the National Conference of Commissioners on Uniform State Laws:
"Purposes:
1. As under the common law of pledge, no filing is required by this Article to perfect a security interest where the secured party has possession of the collateral. Compare Section 9-302(1) (a). This Section permits a security interest to be perfected by transfer of possession only when the collateral is goods, instruments, documents or chattel paper: that is to say, accounts, contract rights and general intangibles are excluded. See Section 5-116 for the special case of assignments of letters and advices of credit. A security interest in accounts, contract rights and general intangibles  property not ordinarily represented by any writing whose delivery operates to transfer the claim  may under this Article be perfected only by filing, and this rule would not be affected by the fact that a security agreement or other writing described the assignment of such collateral as a `pledge'".
The trustee does not suggest any possible legislative purpose which would be served by differentiating between the transfer of physical possession of coins (or other money of numismatic value) and any other tangible personal property susceptible to such physical possession. If the coins in question are excluded as subject to pledge simply because they fit the statutory definition of "money", in spite of the fact they constitute part of inventory and in any realistic sense are a commodity, the result would be that without any rhyme or reason they would be the only species of tangible personal property in which a security interest could not be perfected without filing a financing statement. We do not believe such was the legislative intent.
The conclusion we have reached is fortified upon a consideration of Article 2 (Sales), of the Code. Section 400.2-105 V.A.M.S. contains a definition of the terms "Goods" as used in Article 2, which reads as follows:
"`Goods' means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (article 8 and things in action. `Goods' also includes the unborn young of animals and growing crops and other identified things attached to realty as described in the section on goods to be severed from realty (section 400.2-107)."
This definition, although in some respects similar to that of Section 400.9-105 necessarily differs therefrom, so that it is understandable that a definition common to both Articles was not attempted. For example, the Sales article definition refers to things which are movable at the "time of identification to the contract for sale," while the Secured Transactions article definition refers to those which are movable at "the time the security interest attaches."
More importantly, it is to be noted that the Sales definition excludes, in addition to investment securities and things in action, "the money in which the price is to be paid." In the official comment to this section it is said,

*197 "The exclusion of `money in which the price is to be paid' from the definition of goods does not mean that foreign currency which is included in the definition of money may not be the subject matter of a sales transaction. Goods is intended to cover the sale of money when money is being treated as a commodity but not to include it when money is the medium of payment."

This distinction is important, and accords with reason. Money as a medium of exchange is excluded, but money when treated as a commodity may be sold as other goods. We see no reason why the same distinction between money as a medium of exchange and money when treated as a commodity should not be made in a secured transaction.
The Referee's opinion notes that "goods" is defined to have reference to things, as distinguished from the use to which the things are put. He then held that "the definition of `money' in Section 400.1-201(24) contemplates things, rather than the use or uses of things. The section says in effect that money is a medium of exchange: a thing having a standard of value and capable of passing in commerce and between persons at and for that value." (Emphasis by Referee.)
We do not agree that the statutory definition of "money" necessarily "contemplates" things, or that the section says "in effect" that money is a thing. In this situation, we deem it undesirable to adopt a construction which not only is unreasonable but does not serve to promote any valid legislative purpose.
That money is a thing, in the sense it is tangible, is indisputable, but insofar as the definition thereof is concerned, we believe that what is contemplated thereby is its use. The definition of "money", as used in the Code, to mean "a medium of exchange" etc. clearly has no reference to money when treated as a commodity. It is our view, therefore, that the exclusion of "money" in the definition of "goods" pertains solely to money when used as a medium of exchange and intended to be so used by the parties at the time of the transaction in question. When used or intended to be used and treated as a commodity, as were the coins here involved, they are to be considered "goods," just as are all other commodities.
We believe it significant that every specific kind and category of personal property (with the sole exception of money) which the term "goods" as defined in Article 9 "does not include" is not only defined in but has been otherwise expressly and in terms provided for in that article.
Ordinarily, there would be no occasion to pledge money worth only its face value in connection with a secured transaction. It must not be overlooked that the Code deals with the ordinary and usual commercial practices. Section 400.1-102 V.A.M.S. admonishes that the Code "shall be liberally construed and applied to promote its underlying purposes and policies," one of which is "to simplify, clarify and modernize the law governing commercial transactions." We note, for example, that among the transactions excluded from Article 9 are such transactions as transfers of an interest or claim in or under any policy of insurance, a right represented by a judgment, and "any deposit, savings, passbook or like account maintained with a bank, savings and loan association, credit union or like organization." Section 400.9-104(g) (h) (k). In the official comment pertaining to this section, explaining the purpose of the exclusions, it is pointed out that they go to various types of claims "which do not customarily serve as commercial collateral." If a transaction relating to a transfer of money on deposit in a bank is wholly excluded from the filing requirements of Article 9, it makes no sense at all to hold that the money itself in the physical possession of the Bank may not be held as against the trustee unless a financing statement has been filed. As we have indicated, money as such does not customarily serve as commercial collateral. The coins are so in this case solely because of their numismatic value. We hold, therefore, that the coins which were pledged to the Bank under the security *198 agreement constitute "goods," and therefore, the Bank was not required to file a financing statement in order to perfect its security interest.
Implicit in the ruling of the Referee that the coins in question are not "goods" is the basic assumption that the filing of a financing statement is therefore required by Article 9 in order to perfect the Bank's security interest therein. This is a non sequitur. The conclusion does not follow as of course from the mere premise that money is not "goods" that the coins are necessarily one of the other kinds of property with respect to which a financing statement must be filed.
At first blush, Section 400.9-102 V.A. M.S., which states the policy and scope of Article 9, would appear to justify the assumption that money is covered by the provisions of Article 9, irrespective of the particular class of property in which it may be placed. This section commences with the statement (after making two exceptions not here relevant) that Article 9 "applies so far as concerns any personal property and fixtures within the jurisdiction of this state (a) to any transaction (regardless of its form) which is intended to create a security interest in personal property or fixtures * * *."
Had the statute stopped at this point, it is clear that money would necessarily be included within the scope of the Article.[1]
However, the quoted language is followed by the words, "including goods, documents, instruments, general intangibles, chattel paper, accounts or contract rights; * * *." The question at once is raised of the legislative purpose in making the enumeration following the word "including."
The term "including" has various shades of meaning, in some instances operating as a restriction upon and in others as an enlargement of the general language that precedes it and in still others simply as connoting illustrative examples. And it would appear that this term has been used in all such senses in the very law now under consideration, although most frequently it appears therein as an enlargement or illustration. See, for example, Section 400.1-201 V.A. M.S. which contains general definitions of many of the words and terms used in the Code.
We conclude, as did the Supreme Court of Missouri in construing another statute, that the enumeration following the word "including" in Section 400.9-102 would be rendered meaningless and useless if not intended to clarify and limit the scope of the words "any personal property" and "personal property" "because the latter words, standing alone, encompass the whole field, and if such was the legislative intent, it was unnecessary to say more." State on inf. Huffman v. Sho-Me Power Co-op., 354 Mo. 892, 191 S.W.2d 971, 977.
Unless or to the extent that money is included within one of the other kinds and classes of personal property enumerated following the word "including" in Section 400.9-102(1) (a) V.A.M.S., such enumeration is all-inclusive. Obviously, the statutory definitions of "documents" (Section 400.9-105), "accounts" (Section 400.9-106) and "contract rights" (Section 400.9-106), are not broad enough to include "money," and since the definition of "goods" expressly excludes money, this leaves for consideration only the term "general intangibles" which is defined in Section 400.9-106, as follows:
"`General intangibles' means any personal property (including things in action) other than goods, accounts, contract rights, chattel paper, documents and instruments."
If we were to accord a literal meaning to this definition, then money would be a general intangible simply because it is personal property and not excluded in the *199 enumeration following the words "other than." However, such a literal interpretation would itself be unreasonable and contrary to the purpose of Section 400.9-106, as set forth in the official comment:
"The terms defined in this Section (account, contract right, and general intangibles) round out the classification of intangibles: see the definitions of `document of title' (Section 1-201), `chattel paper' (Section 9-105) and `instrument' (Section 9-105). Those three terms cover the various categories of commercial paper which are either negotiable or to a greater or less extent dealt with as if negotiable: the closely related terms `account' and `contract right' cover those choses in action which may be the subject of commercial financing transactions but which are not evidenced by an indispensable writing. The term `general intangibles' brings under this Article miscellaneous types of contractual rights and other personal property which are used or may become customarily used as commercial security. Examples are goodwill, literary rights and rights to performance. Other examples are copyrights, trade-marks and patents, except to the extent that they may be excluded by Section 9-104(a). This Article solves the problems of filing of security interests in these types of intangibles (Sections 9-103(2) and 9-401)."
Money in the sense we are here using it is not an intangible, nor is it, in the unusual situation here present, ordinarily used as commercial security. We believe it of significance in this connection that the exclusionary language contained in the definition of "goods" in Article 9 reads as follows, "* * * does not include money, documents, instruments, accounts, chattel paper, general intangibles, contract rights and other things in action." The very fact that money is expressly listed as a separate category of personal property in addition to "general intangibles" demonstrates the legislative intent that money is not to be deemed a general intangible.
Hence, unless money, when used and treated as a commodity, is deemed to be "goods," as we have held, then it is not included at all in the various kinds of personal property which are governed by the provisions of Article 9 of the Code, so that in any event the Bank was not required to file a financing statement to perfect its security interest.
The petition for review is sustained and the orders of the Referee are reversed, with directions to sustain the petition to foreclose the security agreement as prayed and to deny the petition of the trustee for a turnover order.
NOTES
[1] Money is personal property, Section 1.020 V.A.M.S., provides that as used in the statutory laws of Missouri, "unless otherwise specifically provided or unless plainly repugnant to the intent of the legislature or to the context thereof * * * (8) `Personal property' includes money, goods, chattels, things in action and evidences of debt."