## APPLEBAUM, et ux v. TRAVELERS INDEMNITY CO.
### No. 73-13900 SP 05
County Court, Dade County.

February 26, 1974.

Clifford A. Schulman, North Miami, for the plaintiffs.

David L. Willing, Miami, for the defendant.

THOMAS G. O'CONNELL, Judge.

This cause came on for trial before the court on January 9, 1974. The court certifies that all of the pertinent evidence bearing upon the court's decision is as follows —

Defendant, Travelers Indemnity Company, (hereinafter called "Travelers") issued to plaintiffs, Adrian and Inez Applebaum, a

homeowners insurance policy number THO 2432517, a copy of which is attached to the statement of claim and which was received into evidence. That insurance policy was in effect on March 2, 1973, and at all times relevant hereto.

In November, 1972, plaintiff, Adrian Applebaum (hereinafter called "plaintiff") secured from the Merchants Bank of Miami a $500 bill. Said bill was not kept on hand at said bank but was ordered from the Federal Reserve Depository. The $500 bill was United States currency of current issue.

Plaintiff carried said bill in his wallet from November, 1972 until March 2, 1973, and did not negotiate nor attempt to negotiate same although numerous opportunities arose during this time where the bill might have been used for such a purpose had plaintiff so desired. The bill was forcibly removed from plaintiff's possession during the course of an armed robbery on March 2, 1973. Neither the wallet nor the $500 bill has been recovered by him.

At the time of the robbery plaintiff kept the bill folded in his wallet, and separate and distinct from the currency kept in a "roll" in a separate pocket. This "roll" of money was used by plaintiff during the course of his business and personal dealings.

Plaintiff does not deal in numismatic objects as a vocation, nor was he so engaged when he acquired the $500 bill, nor has he been engaged in such a vocation since that time. However, plaintiff has in the past collected coins and currency of current issue and sold same, for a profit, to local coin dealers.

At the trial plaintiff displayed to the court certain currencies saved by plaintiff in his wallet, including a $1 bill of current issue and negotiable but containing writing in the nature of "good luck" on same, as well as some $2 bills that are no longer of current issue. Plaintiff has frequenly shown these and other items of currency as collector's items to his friends and relatives, and before its loss, he frequently showed the $500 bill to his friends and relatives as a collector's item. Plaintiff frequently carried these bills in his wallet.

Plaintiff testified as to his intent to treat said $500 bill as a collector's item and testified as to the difficulty, if not impossibility, of negotiating a bill of such size and denomination to any bank or possible third party, unless the holder was personally known to the bank or third party.

It was also admitted that the insurance policy drawn by defendant Travelers, while providing for certain limited coverage of numismatic property as unscheduled personalty, does not define in any manner the term "numismatic property".

After the loss on March 2, 1973, Travelers paid plaintiff $100 pursuant to Coverage C ("unscheduled personal property") in the homeowners policy, the $100 being specified on page 3 of the policy as the maximum liability of Travelers for loss of money, bullion, and bank notes. Plaintiff demanded that Travelers pay him an additional $500 under Coverage C, to reimburse him for loss of the $500 bill as "numismatic property", a permissible item of coverage up to a limit of $1,000. Travelers denied that the $500 was "numismatic property" within the meaning of the homeowners policy, and refused plaintiff's demand. Plaintiff duly filed the instant law suit which proceeded to trial on the issue of whether the $500 bill was "numismatic property".

The court has considered the definition of the word "numismatic" as proffered by plaintiff and contained in Webster's New International Dictionary, Second Edition, which defines same as including coin or currency of current usage and exchange. The court has also considered the case of In re Midas Coin Company, Inc.. E.D.Mo., 264 F. Supp. 193, affirmed, 387 F.2d 118, and the court notes that while the case is not directly in point it does in fact indicate that whether certain property in the nature of "coins" is to be considered "numismatic property" or money depends to a great extent upon the intent of the parties to the transaction in question.

The court also notes the general principle of Florida law that when an ambiguity exists within the coverage of an insurance policy, said ambiguity must be construed in favor of the insured if said interpretation would lead to a greater indemnity.

By order of this court, this final judgment, including findings of fact and certification of the evidence, has been submitted to plaintiff's counsel for approval and signature prior to signature by the court.

Based upon the foregoing, the court finds that the subject $500 bill was intended and was in fact "numismatic property", covered by the Travelers homeowners insurance policy.

It is therefore ordered and adjudged that final judgment be, and is hereby entered in favor of plaintiffs, Adrian and Inez Applebaum, for $500 damages and $10 court costs against the defendant, Travelers Indemnity Company, for which let execution issue.

\* \* \* \* \*

Excerpts from the appellees' brief on appeal to the circuit court are set forth below —

The trial court correctly noted the only case in the nation that has previously dealt with a similar point of law, to wit, whether or not negotiable

currency can partake of the character of goods or personal property, other than being considered as "money".

In the case of *In re Midas Coin Company, Inc.,* E.D.Mo. 1967, 264 F. Supp. 193, *aff'd.,* 8th Cir. 1968, 387 Fed.2d 118, the court was faced with determining whether certain "numismatic" property should be treated as "goods" or "money" under the provisions of the Uniform Commercial Code. The court reviewed an order of a referee in bankruptcy that found the coins involved to be "money" since they were "United States Government coins like other such coins which circulate freely as a medium of exchange and could have been used as money", 264 F. Supp. at 195.

In substance, this is the identical argument being presented to this court by the appellant. The court in the *Midas* case rejected this contention and reversed the finding of the referee and stated, (264 F. Supp. at 197) —

> That money is a thing, in the sense it is tangible, is indisputable, but in so far as the definition thereof is concerned, we believe that what is contemplated thereby is its *use.* [court's emphasis] The definition of "money", *as used in the Code,* [court's emphasis] to mean "a medium of exchange" etc. clearly has no reference to money *when treated as a commodity.* [court's emphasis] It is our view, therefore, that the exclusion of "money" in the definition of "goods" pertains solely to money when used as a medium of exchange and intended to be so used by the parties at the time of the transaction in question. *When used or intended to be used and treated as a commodity* [court's emphasis], as were the coins here involved, they are to be considered "goods", just as are all other commodities.

The record reflects without dispute the intent of appellee to treat the $500 bill in question as a collector's item and numismatic property as opposed to negotiable currency. Appellees respectfully submit that the holding in the *Midas* case, while not directly on all fours factually, supports this finding by the trial judge sub judice.

Appellant further contends that the generally accepted definition of the word "numismatic" refers only to "coins" and does not encompass bills or paper money. This contention flaunts in the face of the generally known and common fact that professional coin collectors, or numismatists by trade, deal not only in "coins" but in "paper money" as a collector's item. In fact, the record reflects that appellee had, at times, sold both coins and currency of current issue to local coin dealers. (R. 23)

Appellant has attempted to show that the definition of the world "numismatic" within the "standard authorities" does not indicate paper currency of current issue. Such a contention, however, is not the case as noted by the trial court. (R. 24) There are many "standard authorities" which indicate that paper currency of current issue constitutes "numismatic" property. For example, "numismatics" is defined as —

> "The science of coins, tokens, metals, *paper money,* and objects closely resembling them in form or purpose, including *standard media*

*of exchange* and decorations." [Emphasis supplied] *Webster's New International Dictionary, Second Edition,* p. 1674 (1958).

\* \* \* \* \*

"The study of coins, metals and related objects. *as paper money."* [Emphasis supplied] *Funk & Wagnalls Standard College Dictionary,* p. 928 (1968).

\* \* \* \* \*

"The study or collecting of coins or *paper currency,* metals, tokens, etc. . . " [Emphasis supplied] *World Book Encyclopedia Dictionary,* p. 1329 (1963).

\* \* \* \* \*

"The science and study of coins, tokens, *paper money.* and other media of exchange, and of metals." [Emphasis supplied] *Encyclopedia Americana,* Vol. 20, p. 543 (1974).

Thus, many "standard authorities" recognize that paper currency of a standard media of exchange falls within the definition of "numismatic".